UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID BENTKOWSKI, | ) | CASE NO.1:08CV2154 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| Vs. | ) | |
| | ) | |
| SCENE MAGAZINE, ET AL., | ) | OPINION AND ORDER |
| | ) | |
| Defendant. | ) | |

## CHRISTOPHER A. BOYKO, J:

This matter comes before the Court upon the Defendants *Scene* Magazine, Cleveland Scene Publishing, LLC, Cleveland Scene, LLC and, Village Voice Media Holdings, LLC's Joint Motion for Summary Judgment. For the following reasons, the Motion is granted.

Plaintiff David Bentkowski alleges one count of defamation, arising from an article published in *Cleveland Scene* on August 1, 2007. Defendants filed a Motion for Summary Judgment requesting the Court dismiss the Complaint with prejudice. Defendants contend that there are no false statements of fact in the article at issue. Defendants further contend that Plaintiff Mayor, as a public official, is unable to prove that Defendants published a false statement with actual malice. Additionally, Defendants assert Plaintiff is unable to demonstrate actual damages proximately caused by the publication at issue and contend this article is constitutionally protected opinion.

## I. FACTS

Plaintiff David A. Bentkowski is the Mayor of Seven Hills. Plaintiff's Complaint

1



contains one count of defamation, alleging that an article published in *Cleveland Scene* on August 1, 2007, falsely stated that Plaintiff "routinely tried to pull off stunts like limiting residents' feedback at meetings and barring government employees from running for office," and falsely implied that Plaintiff sought personal information about his constituents, including young women, for illicit purposes. (Compl. ¶10.)

In 2007, Plaintiff sent a letter and questionnaire to the young residents of Seven Hills. (Compl. ECF No. 1, Ex. A.) The two page questionnaire accompanying the letter first asks for the names and ages of everyone living in the household, and requests e-mail, website, and MySpace page addresses. It stated:

> It will help us notify you of various things that may be of interest to you. For example, if you have an 18 year old daughter we can invite her to participate in the Miss Seven Hills Pageant. If you have a 10 year old son, we can remind you of little league sign ups.

*Id. Scene* writer Joe Tone reviewed a copy of Plaintiff's young residents letter and questionnaire and used it as a subject for his "Bizarre Boy Mayor" article which was published in the "First Punch" section of *Scene*'s August 1, 2007 edition. (Tone Aff. ¶¶ 10-11.) The article also referenced two "stunts" the Mayor purportedly tried to pull off; "limiting residents' feedback at meetings and barring government employees from running for office." The article goes on to make statements such as, "Bentkowski, it's safe to say, has the political IQ of Quiznos' lettuce." (Compl. ECF No. 1, Ex. A.)

## II. PROCEDURAL HISTORY

Plaintiff filed a Complaint in Cuyahoga County Court of Common Pleas, alleging a single count of defamation against Defendants Scene Magazine, Cleveland Scene Publishing,

2

LLC, Cleveland Scene, LLC, Village Voice Media Holdings, LLC and unnamed John Does. On September 8, 2008, Defendants removed the case to United States District Court on the basis of diversity jurisdiction. On October 16, 2008, the Court held a Case Management Conference attended by all counsel. Amongst other dates, the Court set a non-expert discovery cut-off date of February 27, 2009, and a cut-off date for amending pleadings of December 15, 2008. On December 14, 2008, Plaintiff filed a First Amended Complaint naming additional Defendants and two additional claims for defamation.

On March 23, 2009, the Court ordered sanctions, including striking Plaintiff's Amended Complaint, because Plaintiff and Plaintiff's counsel had utterly failed to prosecute this action. (ECF No. 29.) The Court also denied Plaintiff's Motion for Reconsideration of the Denial of his February 27, 2009 Motion to Extend Non-Expert Discovery.

On April 23, 2009, Defendants filed a Motion for Summary Judgment requesting this Court to dismiss the Complaint with prejudice.

### III. LAW AND ANALYSIS

#### A. Standard of Review

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Int'l Union v. Cummins, Inc.*, 434 F.3d 478, 483 (6th Cir. 2006); *Turner v. City of Taylor*, 412 F.3d 629, 637 (6th Cir. 2005). The initial burden to demonstrate the absence of a genuine issue of material fact rests with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "When a motion for summary judgment is properly made and supported" the initial burden shifts to the

3

opposing party, who "may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *accord Leadbetter v. Gilley*, 385 F.3d 683, 689-90 (6th Cir. 2004); *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003). A fact is material only if its resolution "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

When deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006); *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005). "Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true." *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004). However, summary judgment should be granted if the party bearing the burden of proof at trial does not establish an essential element of its case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. 317). Furthermore, the court is not required "to search the entire record to establish that it is bereft of a genuine issue of material fact." *Betkerur v. Aultman Hospital Ass'n.*, 78 F.3d 1079, 1087 (6th Circ. 1996). Rather, the burden falls on the non-moving party to designate specific facts or evidence in dispute. *Anderson*, 477 U.S. at 249-250.

### B. Plaintiff's Libel Claim

Summary judgment entered in Defendant's favor is appropriate in a libel action if any one of the following critical elements of a libel case cannot be established with convincing clarity. "First, there must be the assertion of a false statement of fact; second, that the false statement was defamatory; third, that the false defamatory statement was published by defendants; fourth, that the publication was the proximate cause of the injury to the plaintiff; and fifth, that the defendants acted with the requisite degree of fault." *Celebrezze v. Dayton Newspapers, Inc.*, 41 Ohio App. 3d 343, 347 (1988).

#### 1. Constitutionally Protected Opinion

Plaintiff has not alleged facts that give rise to a federal defamation claim. The Supreme Court stated a federal defamation claim requires that "[the] defamation had to occur during the course of the termination of employment." *Paul v. Davis*, 424 U.S. 693, 710 (1976). "Absent a further inquiry, such as loss of a government job or loss of a legal right or status, defamation, by itself, does not constitute a remediable constitutional claim."*Voyticky v. Village of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005) (citing *Paul v. Davis*, 424 U.S. at 701-03). Therefore, Plaintiff's defamation claim can only be brought under Ohio Law.

*Article 1, Section 11 of the Ohio Constitution* guarantees every citizen the right to publish freely his or her sentiments on all subjects. *Wampler v. Higgins*, 93 Ohio St. 3d 111 (2001). The Ohio Constitution provides an absolute privilege for expressions of opinion and requires the trial court to make a categorical determination in every defamation case as to whether an allegedly defamatory statement is a non-actionable statement of opinion or a statement of fact. *Wampler*, 93 Ohio St. 3d at 119.; *see also Vail v. Plain Dealer Publishing Co.*, 72 Ohio St. 3d 279, 281

5

(1995); *Scott v. News-Herald*, 25 Ohio St. 3d 243, 250 (1986).

Determining whether a statement is one of fact or opinion requires considering the totality of the circumstances test. This test requires the Court analyze the following factors: 1) the specific language used; 2) whether the statement is verifiable; 3) the general context of the statement; and 4) the broader context in which the statement appears. *Vail*, 72 Ohio St. 3d at 282 (citing *Scott v. News-Herald*, 25 Ohio St. 3d at 250); *Ferreri v. Plain Dealer Publishing Co.*, 142 Ohio App. 3d. 629 (2001).

"The specific language used must be reviewed, focusing on the common meaning ascribed to the words by an ordinary reader. [The Court] must determine whether a reasonable reader would view the words used to be language that normally conveys information of a factual nature or hype and opinion..." *Vail*, 72 Ohio St. 3d at 282. The specific language used by Defendants in the article, when afforded its common and ordinary meaning, is the kind of figurative, imprecise, and hyperbolic language signaling to the ordinary reader that the author is expressing an opinion. The headline, "The Bizarre Boy Mayor" is the first signal that a factual report will not follow this title. Describing the Mayor's letter as "bizarre" and reading "like a student-council campaign speech" uses imprecise and figurative language and does not purport to state actual facts about the Mayor. The reporter's sarcasm allows the reader to know that the reporter is expressing an opinion in the statements, such as, the Plaintiff has the "political IQ of Quiznos' lettuce," is the "Mayor of Autistic Village," as well as, describing two of the Plaintiff's political initiatives as "stunts." "Use of such sarcasm, editorial hyperbole and epithets has long been recognized as constitutionally protected speech..." *Ferreri*, 142 Ohio App. 3d at 640. This factor weighs in favor of Defendants.

6

The second step in the totality of the circumstances test is determining whether the statements are verifiable. "A statement is deemed verifiable if: (1) the author represents he has knowledge or evidence that substantiates the statements, and (2) there is a plausible method to verify the statements." *SPX Corp. v. Doe*, 253 F. Supp. 2d 974, 980-81 (N.D. Ohio 2003) (citing *Scott*, 25 Ohio St. 3d at 251-252). "Insofar as the statement lacks a plausible method of verification, a reasonable reader will not believe that the statement has specific factual content." *Scott*, 25 Ohio St. 3d at 251-252 (citing *Ollman v. Evans*, 750 F.2d 970, 979 (D.C. Cir. 1984)). Here, there are no objective tests establishing whether a person or a letter is bizarre, whether a letter reads like a student council campaign speech, or determining whether an individual's political IQ amounts to a Quiznos' lettuce. Determinations of this sort are based on opinion and not objectively verifiable facts. This factor weighs in favor of Defendants, however, there are some statements that are verifiable; therefore, these statements will be addressed later with regard to the element of actual malice.

The Court must analyze the general context of the statements. The reporter utilizes sarcasm and hyperbole, which are more typical of persuasive speech than factual reporting. Humor is used from the very first sentence, consequently, the reader should know this is a piece of commentary poking fun at the Mayor. This factor weighs in favor of Defendants.

Finally, the Court must consider the broader context in which the statements appear. "First Punch" is a humor-driven section of *Scene* that features comments and criticism. "[D]ifferent types of writing have...widely varying social conventions which signal to the reader the likelihood of statement's being either fact or opinion." *Scott*, 25 Ohio St. 3d. at 253 (citations omitted). Forum and commentary newspaper sections, such as "First Punch," that are

7

venues associated with "cajoling, invective and hyperbole" are more likely opinion than fact. *Id.* This factor weighs in favor of Defendants.

Therefore, considering the totality of the circumstances, the Court is convinced that the ordinary reader would accept this column as opinion, and not fact. Therefore, the statements previously discussed are protected under *Section 11, Article I of the Ohio Constitution*.

### 2. Actual Malice

The First Amendment bars recovery by a public official, such as Plaintiff Mayor, unless he demonstrates actual malice by clear and convincing evidence. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 509-510 (1991). Actual malice is a constitutional term of art. The United States Supreme Court has defined actual malice as the publication of a defamatory matter with knowledge of its falsity or reckless disregard for its truth or falsity. *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-280 (1964); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 328 (1974).

Reckless disregard has a specific meaning in the First Amendment context. A defendant acts with reckless disregard for the truth only if he strongly suspects that his or her report is false when he or she publishes it. *St. Amant v. Thompson*, 390 U.S. 727, 731-732 (1968). "The test is not whether a defendant would have or should have known, but rather whether a defendant *did in fact* have knowledge of falsity or entertain serious doubts and did *in fact* make a statement with calculated falsehood." *F&J Enterprises v. C.B.S., Inc.*, 373 F. Supp. 292, 299 (N.D. Ohio 1974) (emphasis in original).

Plaintiff alleges that the article at issue constitutes libel *per se*. To be considered libel *per se*, the publication "must consist of words which import an indictable criminal offense involving moral turpitude or infamous punishment, imputes some loathsome or contagious

8

disease which excludes one from society or tends to injure one in his trade or occupation." *McCartney v. St. Francis deSales*, 80 Ohio App. 3d 345, 353 (1992). Although Plaintiff alleges this article constitutes libel *per se* and libel *per quod*, "[t]he common law distinctions between libel per se and libel per quod have become virtually irrelevant in libel actions brought by public officials....plaintiff [must prove] the alleged defamatory statement was made with actual malice." *Celebrezze v. Netzley*, 8th Dist. Ct. App. No. 53864, 1988 Ohio App. LEXIS 3153, at *22 (Aug. 4, 1988).

The Court has determined that this article is constitutionally protected, however, a few statements in the article are verifiable. Therefore, the Court will determine whether these verifiable statements were made with actual malice to decide whether or not Plaintiff can establish a genuine issue of material fact as to whether this article is defamatory. "...[W]hen a statement is supported by some basis in fact, courts have found insufficient evidence of actual malice even if the statement is ultimately found to be untrue." *Lansky v. Rizzo*, 8th Dist. Ct. App. No. 88356, 2007 Ohio App. LEXIS 2308, at *23 (May 24, 2007) *See also Mosley v. Evans*, 90 Ohio App.3d 633, 638 (1993).

The Court will first examine whether Defendant's statement, that Plaintiff "routinely tries to pull off stunts like limiting residents' feedback at meetings and barring government employees from running for office," has a basis in fact. At the March 13, 2006 council meeting, Plaintiff and Council members introduced and passed Ord. 27-2006, to enact Rule 27 which would exclude public comment on new matters at Council meetings. (Def Br. Supp. Mot. Summ. J. ECF No. 31, Ex. M, N.) Ordinance 27-2006 provided:

All miscellaneous remarks from the audience shall be restricted to matters only that

9

were previously submitted to a Council representative, or a Caucus or Committee meeting, or a City Department with direct involvement in the matter. The intention of this rule is that no response of a first nature is to be requested on the floor of Council.

(Def. Br. Supp. Mot Summ. J ECF No. 31, Ex. N.) Plaintiff admitted to supporting the underlying principle of Ord. 27-2006:

> Request for Admission No. 5: Admit that you initially supported Seven Hills Ordinance 27-2006
>
> Response: Admitted in part and denied in part. I was one of the persons listed as being responsible for "introducing" the legislation. However, the subject of the legislation is not my concern as it dealt with procedure at City Council meetings. I was and remain, an advocate for citizens to express their opinions and concerns to the City. I believed then, and believe now, that this is best done at caucus meetings where specific detail and concerns can be discussed. The City Council has the right to regulate procedure at its own meetings.

(Pl. Rep. to Def. Second Req. for Admis. ECF No. 31, Ex. R.) At its February 26, 2007 meeting, Council voted to place a proposed charter amendment on the ballot that would ban all public employees from holding public office:

> PROPOSAL That the Charter of the City of Seven Hills be amended to provide that effective with the passage hereof, that no elected official, including the Council, the Mayor, and the Director of Law, shall hold any other public office or public employment during his term except as otherwise provided in this Charter and further excepting the office of Notary Public and membership in the National Guard or Reserve Corp.

(Def. Br. Supp. Mot Summ. J ECF No. 31, Ex. S.) Plaintiff also endorsed this measure in the

*Seven Hills News:*

> The problem is, the City has become so desirable, that with 2007 being an election year, all kinds of "forces" are trying desperately to take over control. Mayor David Bentkowski and several wise members of the City Council are trying to put an issue

10

> before the voters for the May ballot to prohibit anyone from holding elected or appointed office in Seven Hills while also holding employment with some other government body.
>
> . . . .
>
> The Mayor hopes that City Council puts on the ballot an issue where the people will decide if it is right for someone to hold two jobs in this manner. If City Council fails to do that on Monday, the Mayor will lead a citizens group to collect the needed signatures and place the issue on the ballot for public vote anyway.

(Def. Br. Supp. Mot Summ. J ECF No. 31, Ex. D at 2.) This evidence demonstrates that Plaintiff supported both legislative efforts. This leads the Court to conclude that the statement Plaintiff "routinely tries to pull off stunts like limiting residents' feedback at meetings and barring government employees from running for office" is supported by a basis in fact, regardless whether it is, in fact, true. Therefore, the Court finds that these statements were made without actual malice.

Plaintiff alleges Defendants implied the notion that he had solicited information about "young residents" in Seven Hills to satisfy a perverse motivation or for the illicit purpose of having private information about young women. This allegation stems from the statement that Plaintiff "sent a bizarre letter to the suburb's 'young residents.'" The article continues to note:

> The letter also includes a lengthy questionnaire that asks residents to provide the ages and names of 'everyone living in your household.' This, Bentkowski writes, 'will help us notify you of various things that may be of interest to you. For example, if you have an 18-year-old daughter we can invite her to participate in the Miss Seven Hills Pageant,' an event the mayor has insisted he emcee. It also asks for e-mail, web, and MySpace addresses.

(Compl. ECF No. 1, Ex. A.) The questionnaire did in fact ask residents to provide their names

11

and ages of everyone living in their household. It also cited the example of using the information to contact a resident's 18 year old daughter to participate in the Miss Seven Hills Pageant and it asked for e-mail, web, and MySpace addresses. (Compl. ECF No. 1, Ex. A.) The only statement that may not be true is whether the Plaintiff insisted he emcee the Miss Seven Hills Pageant.

Plaintiff promoted and publicized his involvement as emcee of the pageant. For example, in an edition of the *Seven Hills News*, Plaintiff published a picture of himself with the winner of the 2006 Miss Seven Hills Pageant, along with an article he wrote to encourage potential contestants to enter. Plaintiff stated:

> This year's pageant is going to include...celebrity Emcees Eileen McShea from Channel 3 and Mayor David Bentkowski.
>
> . . . .
>
> Don't be scared or shy. The Mayor has emceed the pageant many times and Eileen interviews people for a living on Channel 3, they know exactly how to make you calm and relaxed and do your best.

(Def. Reply Br. Supp. Summ. J. ECF No. 43, Ex. EE at 7.) Plaintiff's personal website promotes his role as emcee of the pageant: "Mayor David Bentkowski is one of the most popular hosts of the Miss Seven Hills Pageant and every year he usually tries to do some type of fun entertainment for the kids in the audience." (Def. Reply Br. Supp. Summ. J. ECF No. 43, Ex. FF.) Although this evidence may not prove Plaintiff *insisted* he emcee the pageant, his self-promotion as the emcee certainly provides a basis in fact for this statement. The Court finds this statement was not made with actual malice because it has a basis in fact.

## IV. CONCLUSION

There is no genuine issue of material fact as to whether the article is constitutionally protected opinion; it is. As a matter of law, the article is not defamatory. Additionally, there is no genuine issue of material fact as to whether the statements were published with actual malice; they were not. Therefore, given that Plaintiff Mayor is a public official, he must demonstrate the defamatory statements were made with actual malice as part of his prima facie case. No reasonable jury could conclude that this article was published with actual malice. This Court grants summary judgment against Plaintiff and dismisses the Complaint with prejudice.

IT IS SO ORDERED.

S/Christopher A. Boyko
CHRISTOPHER A. BOYKO
United States District Judge

November 6, 2009